# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL NO. 3:10CV536-RJC-DSC

| | |
|---|---|
| **EGBERT S. KING,** </br> Plaintiff, </br> </br> vs. </br> </br> **MICHAEL J. ASTRUE,** </br> **Commissioner of Social** </br> **Security Administration,** </br> Defendant. | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (document #9) and "Memorandum ... in Support ..." (document #10), both filed March 17, 2011; and the Defendant's "Motion for Summary Judgment" (document #11) and "Memorandum in Support ... " (document #12), both filed May 19, 2011.  This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and these Motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be <u>denied</u>; that Defendant's Motion for Summary Judgment be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

## I. PROCEDURAL HISTORY

On July 6, 2007, Plaintiff filed an application for a period of disability, disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"), alleging that he became disabled as of May 1, 2004.  Plaintiff's application was denied initially and on reconsideration, and a hearing

was held on September 23, 2009. At the hearing, Plaintiff amended his alleged onset date to September 6, 2006.

On December 7, 2009, the Administrative Law Judge ("ALJ") issued a decision denying Plaintiff benefits. (Tr. 25-32). In his decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 32). The ALJ then found that Plaintiff suffered from diabetes mellitus which was a medically determinable "severe impairment," but his impairment or combination of impairments did not meet or medically equal any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Id. The ALJ went on to find that Plaintiff retained the Residual Functional Capacity ("RFC")[1] to perform a full range of medium work.[2] The ALJ determined that Plaintiff could perform his past relevant work as a window glazer. Id. Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. Id.

By notice dated August 25, 2010, the Appeals Council denied Plaintiff's request for further administrative review.

Plaintiff filed the present action on October 25, 2010. Plaintiff assigns error to the ALJ's formulation of his RFC, his evaluation of Plaintiff's credibility, and his determination that Plaintiff could perform his past relevant work. See Plaintiff's "Memorandum in Support ..." at 7-16

---

[1] The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[2] "Medium" work is defined in 20 C.F.R. § 404.1567(c) as follows:
(c) Medium work. Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

2

(document #10). The parties' cross dispositive Motions are ripe for disposition.

## II. <u>STANDARD OF REVIEW</u>

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, <u>Richardson v. Perales</u>, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990); <u>see also</u> <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992) (<u>per curiam</u>). The District Court does not review a final decision of the Commissioner <u>de novo</u>. <u>Smith v. Schweiker</u>, 795 F.2d 343, 345 (4th Cir. 1986); <u>King v. Califano</u>, 599 F.2d 597, 599 (4th Cir. 1979); <u>Blalock v. Richardson</u>, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In <u>Smith v. Heckler</u>, 782 F.2d 1176, 1179 (4th Cir. 1986), <u>quoting</u> <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

<u>See also</u> <u>Seacrist v. Weinberger</u>, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. <u>Hays v. Sullivan</u>, 907 F.2d at

3

1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

The question before the ALJ was whether at any time the Plaintiff became "disabled," as that term of art is defined for Social Security purposes.[3]  Concerning his first assignment of error, Plaintiff had the burden of establishing his RFC, 20 C.F.R. §§ 404.1512(c), 416.912(c), which is relevant at steps four and five of the sequential evaluation process to determine whether he could perform his past work or other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1545(a)(5), 404.1560(c)(2), 416.945(a)(5), 416.960(c)(2). In assessing Plaintiff's functional limitations, the ALJ reviewed and weighed the medical evidence in formulating his findings (Tr. 28-31). The weighing of medical evidence is a task reserved to the Commissioner. See Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005).

The ALJ specifically addressed the records and opinions of Plaintiff's treating sources, the examining sources, and the opinions of the state agency medical consultants. (Tr. 28-31). As the ALJ explained, there was no treating physician opinion in the record that indicated Plaintiff was disabled. (Tr. 31). Both state agency reviewing physicians opined that Plaintiff could occasionally lift and/or carry fifty pounds; could frequently lift and/or carry twenty-five pounds; could stand,

---

[3]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

4

walk, and sit for a total of about six hours per day for each activity; and had no limit in pushing or pulling. (Tr. 199-206, 226-233). As the ALJ recognized, these limitations are consistent with the demands of medium work. (Tr. 31). See 20 C.F.R. §§ 404.1567(c), 416.967(c) (defining medium work as involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."). The ALJ was entitled to rely on the opinion evidence in formulating Plaintiff's RFC, particularly since there was no contradictory opinion from a treating medical source. See Johnson v. Barnhart, 434 F.3d at 657 (an ALJ can give great weight to an opinion from a medical expert when the medical expert has thoroughly reviewed the record and the opinion is consistent with other opinions and objective medical evidence in the record). The opinion of a nonexamining physician constitutes substantial evidence in support of the ALJ's decision when it is consistent with the record. Smith v. Schweiker, 795 F.2d 343, 345-346 (4th Cir. 1986); Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984). Plaintiff has not challenged the ALJ's assessment of these sources. Thus, the ALJ's RFC assessment is supported by substantial evidence.

Plaintiff argues that the ALJ's decision should be reversed because the ALJ did not properly conduct a function-by-function analysis of his RFC as required by Social Security Ruling 96-8p. Other courts have rejected this argument. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (where ALJ's RFC accounts for limitations supported by the record that did not depend on claimant's subjective complaints, "[p]reparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary"); Zatz v. Astrue, 346 F. App'x 107, 111-12 (7th Cir. 2009) ("an ALJ need not provide superfluous analysis of irrelevant limitations or relevant limitations about which there is no conflicting medical evidence"); see also Depover v. Barnhart, 349 F.3d 563, 567-68 (8th Cir. 2003).

Plaintiff points to no additional limitation the ALJ should have included. The state agency

5

reviewing physicians both conducted function-by-function assessments of Plaintiff's functioning, and opined that Plaintiff had no limitations other than a limitation to medium work. (Tr. 199-206, 226-233). The ALJ relied on those opinions in making his own RFC assessment. (Tr. 31, 32, 199-206, 226-233). Because the ALJ based his assessment of Plaintiff's RFC on the function-by-function assessment of the state agency reviewing physicians, the ALJ's RFC assessment complied with SSR 96-8p. See Onishea v. Barnhart, 116 F. App'x 1, 2 (5th Cir. 2004) (ALJ complied with SSR 96-8p by basing his RFC on state examiner's function-by-function analysis of exertional limitations) (cited with approval in Lemken v. Astrue, Civ. No. 5:07-cv-33, 2010 WL 5057130, at *8 (W.D.N.C. Jul. 26, 2010) (attachment 1)). As the Court held in Lemken, where, as here, "Plaintiff has failed to present evidence that contradicts the ALJ's decision, the Plaintiff's contention that the ALJ's decision should be remanded is unavailing." Lemken, 2010 WL 5057130 at *8. The ALJ did not err by declining to engage in the superfluous and irrelevant exercise of listing all of the functions that Plaintiff could perform without limitation. Bayliss, 427 F.3d at 1217; Zatz, 346 F. App'x at 111-12.

Plaintiff also argues that the ALJ's RFC determination is fatally flawed because it did not make a specific finding that Plaintiff could perform sustained work on a regular and continuing basis. Plaintiff's argument has been rejected by this Court. Grubby v. Astrue, No. 1:09-cv-364, 2010 WL 5553677 at *15 (W.D.N.C. Nov. 18, 2010) (attachment 2). As the Court explained in Grubby, "[b]y definition,... the RFC determination contemplates that an individual will sustain that capacity for 8 hours per day, 5 days per week." Id. (citing SSR 96-8p; Perkul v. Barnhart, 153 F. App'x. 329, 332 (5th Cir. 2005)). This argument does not provide a basis for remanding the ALJ's well-supported RFC determination. Grubby, 2010 WL 553677 at *15.

Plaintiff next argues that the ALJ's credibility assessment is not supported by substantial

6

evidence. The determination of whether a person is disabled by nonexertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996), citing 20 C.F.R. § 416.929(b); and § 404.1529(b); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Id. at 595, citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1). The regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

The record contains evidence of Plaintiff's diabetes mellitus – which could be expected to produce some of the symptoms claimed by Plaintiff. Accordingly, the ALJ found Plaintiff to have met the first prong of the test. The ALJ then properly determined, however, that Plaintiff's subjective complaints were not fully credible, as they were not consistent with the objective evidence in the record. (Tr. 32).

The ALJ considered the relevant evidence in the record, including Plaintiff's medical history, medical signs and laboratory findings, treatment history, and reported daily activities. (Tr. 28-31). See 20 C.F.R. §§ 404.1529(c), 416.929(c). Plaintiff contends that the ALJ's assessment is flawed because it was impermissibly conclusory. According to Plaintiff, the ALJ failed to comply with

7

SSR 96-7p and 20 C.F.R. § 404.1529, because he did not consider all of the factors enumerated in those provisions. However, the ALJ is not required to discuss each factor in his decision. The decision must contain "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. This Court has held that where an ALJ's adverse credibility finding relied on an absence of objective proof of symptoms, the claimant's activities of daily living, and the claimant's medication regimen, the ALJ fulfilled the duty to explain the adverse credibility determination. Rogers v. Barnhart, 204 F. Supp. 2d 885, 895-96 (W.D.N.C. 2002).

As in Rogers, the ALJ here relied on several factors in declining to fully credit Plaintiff's alleged limitations. (Tr. 29-31). As the ALJ explained, Plaintiff's medical records did not corroborate the alleged severity of his limitations. (Tr. 29-31). While Plaintiff's complaints did not need to be fully supported by objective medical evidence, such evidence is nonetheless of crucial importance in assessing credibility. See Craig v. Chater, 76 F.3d 585, 595 (4th Cir. 1996) (characterizing objective medical evidence as "crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work.") The ALJ also took note of the effectiveness of Plaintiff's medications and treatment. (Tr. 30).

As the ALJ explained, treatment records from Plaintiff's physicians revealed that his conditions were well-controlled when Plaintiff complied with treatment. (Tr. 29-30). The ALJ pointed to doctors' visits in March and June of 2007, which indicated Plaintiff was not maintaining his diabetic diet and not keeping a log of his daily blood sugar readings, despite having been advised to do so. (Tr. 195-196). However, in December 2008, Plaintiff's treating physician described his

8

A1C glucose reading[4] as "great" and in July 2009, his A1C reading was down to 7.6 and his blood pressure was well-controlled. (Tr. 29, 239, 245). Plaintiff told his doctor in May 2009 that his increased blood sugar was primarily diet-related. In July 2009, his doctor discussed dietary and exercise improvements. (Tr. 244-245). The ALJ found it significant that Plaintiff's course of treatment revealed no complaints of symptoms from high blood pressure, such as blurred vision or headaches, and that his symptoms and conditions were well-controlled by medication (Tr. 241-245). The ALJ reasonably concluded that Plaintiff's treatment history belied his complaints of disabling symptoms. See SSR 96-7p (medical treatment history key factor in weight credibility of an individual's statements).

The ALJ also found it significant that treatment records from Plaintiff's physicians did not corroborate the limitations he alleged stemmed from his conditions. (Tr. 29). See SSR 96-7p ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.") Plaintiff testified that he experienced dizziness when his blood sugar was too high or low (Tr. 14), and that his blood pressure was only beginning to come under control (Tr. 14), but the ALJ pointed out that Plaintiff did not complain of symptoms such as blurred vision or headaches from his hypertension, and there was no apparent reference to dizziness in his treating physicians' records. (Tr. 30-31). The ALJ found that Plaintiff's only symptoms from his diabetes were elevated glucose readings and occasional diabetic neuropathy, and these symptoms were controlled when Plaintiff complied with treatment. (Tr. 30-31). The burden of proof was on Plaintiff to establish the nature, duration, severity, and resulting functional

---

[4]The "A1C" rating or "glycostated hemoglobin (Hb $A_{1c}$) is a test that estimates plasma glucose control during the preceding one to three months. A normal Hb $A_{1c}$ level is about 6%, while a score in the range of 9-12% indicates poorly controlled diabetes. See The Merck Manual of Diagnosis and Therapy 170 (Mark H. Beers, M.D., and Robert Berkow, M.D., eds., 17th ed. 1999).

limitations stemming from his impairments. See 20 C.F.R. §§ 404.1512, 416.912. The ALJ reasonably relied on the inconsistency between his allegations and his statements to his treating physicians, see SSR 96-7p, as well as the inconsistency between Plaintiff's alleged limitations and the assessments of the state agency medical experts who opined that Plaintiff could perform work at the medium exertional level. (Tr. 31, 199-206, 226-233). See 20 C.F.R. §§ 404.1529(c), 416.929(c) (in evaluating symptoms, ALJ considers opinions of nontreating sources).

Finally, Plaintiff assigns error to the ALJ's conclusion that he could perform his past relevant work. Plaintiff attempts to shift the burden to the Commissioner at step four, arguing that the ALJ failed to comply with Social Security Ruling 82-62 because his decision did not make specific findings regarding the physical and mental demands of Plaintiff's past relevant work as a window glazer. To the contrary, Plaintiff bore the burden of proving that he was unable to perform his past relevant work. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). Social Security Ruling 82-62 does not alter this burden, and explicitly states that the "claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work." SSR 82-62.

In assessing the physical and mental demands of Plaintiff's past relevant work, the ALJ relied on the Vocational Expert's (VE's) assessment of Plaintiff's description of his job duties as a window glazer and the Dictionary of Occupational Titles (DOT) definition of the position of window glazer. (Tr. 31). As the ALJ found, "[v]ocational testimony establishes that the claimant's past relevant job as a window glazer required the performance of low semi-skilled duties at a medium exertional level." (Tr. 31). The VE explicitly testified that Plaintiff's past relevant work as a window glazer was performed at the medium exertional level at a semi-skilled level. (Tr. 18).

10

The ALJ asked the VE whether an individual with Plaintiff's vocational characteristics, capable of performing work at the medium exertional level, could perform his past relevant work, and the VE responded that he could. (Tr. 18). The regulations specifically provide that the ALJ may rely on VE testimony regarding a claimant's ability to perform his past relevant work. See 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). Plaintiff has identified no error in the VE's testimony, and the ALJ properly relied on that testimony in determining that Plaintiff was capable of performing his past relevant work as a window glazer. Id.

In short, Plaintiff bore the burden of establishing the exertional and nonexertional demands of his past relevant work, and the ALJ appropriately relied on the VE's testimony that, given Plaintiff's submissions to the agency and his testimony, he could perform his past relevant work as a window glazer (Tr. 17-18, 30). 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2).

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles v. Shalala, 29 F.3d 918, 923 (4th Cir. 1994)(citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of Plaintiff's RFC, subjective complaints, work history and his ultimate determination that Plaintiff was not disabled.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (document #9) be **DENIED**; that Defendant's "Motion for Summary Judgment" (document #11) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED**.

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Robert J. Conrad, Jr.

**SO RECOMMENDED AND ORDERED**.

Signed: May 24, 2011

David S. Cayer
United States Magistrate Judge